## UNITED STATES BANKRUPTCY COURT FOR THE
## MIDDLE DISTRICT OF TENNESSEE AT NASHVILLE

| | |
|---|---|
| In re:<br><br>**ROBERT GORDON ROY and LOUISE MARIE-THERESE VANDE WIELE,**<br><br>            **Debtors.** | **Case No. 15-06199**<br>**Chapter 11**<br>**Judge Marian F. Harrison**<br><br>**DISCLOSURE STATEMENT DESCRIBING ORIGINAL CHAPTER 11 PLAN** |

## TABLE OF CONTENTS

I.    **INTRODUCTION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
      A.    Purpose of This Document . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3
      B.    Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing . . . . . .  4
            1.    Time and Place of the Confirmation Hearing . . . . . . . . . . . . . . . . . . . .  4
            2.    Deadline for Voting For or Against the Plan . . . . . . . . . . . . . . . . . . . . .  4
            3.    Deadline for Objecting to the Confirmation of the Plan . . . . . . . . . . . .  5
            4.    Identity of Person to Contact for More Information Regarding the Plan. . 5
      C.    Disclaimer . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .. . 5
II.   **BACKGROUND** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
      A.    Description and History of the Debtor's Business . . . . . . . . . . . . . . . . . . . . .  5
      B.    Management of the Debtor Before and After the Bankruptcy . . . . . . . . . . . . .  5
      C.    Events Leading to Chapter 11 Filing  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
      D.    Significant Events . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .. .  6
            1.    Bankruptcy Proceedings . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6
            2.    Other Legal Proceedings . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6
            3.    Actual and Projected Recovery of Preferential or Fraudulent Transfers.  6
            4.    Procedures Implemented to Resolve Financial Problems . . . . . . . . . . . .  6
            5.    Current and Historical Financial Conditions  . . . . . . . . . . . . . . . . . . . .  7
III.  **SUMMARY OF THE PLAN OF REORGANIZATION** . . . . . . . . . . . . . . . . . . . . . . 7
      A.    What Creditors and Interest Holders Will Receive Under the Proposed Plan. . . . 7
      B.    Unclassified Claims  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
            1.    Administrative Expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7
            2.    Priority Tax Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7
      C.    Classified Claims and Interests . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
            1.    Classes of Secured Claims  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8
            2.    Classes of Priority Unsecured Claims  . . . . . . . . . . . . . . . . . . . . . . . . .  9
            3.    Classes of General Unsecured Claims . . . . . . . . . . . . . . . . . . . . . . . . . .  9
            4.    Class(es) of Interest Holders . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
      D.    Means of Effectuating the Plan . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
            1.    Funding for the Plan . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
            2.    Post-Confirmation Management . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
            3.    Disbursing Agent  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
      E.    Risk Factors . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

1

F.     Other Provisions of the Plan .......................................... 11
     1.     Executory Contracts and Unexpired Leases ...................... 11
          a.     Assumptions ......................................... 11
          b.     Rejections ........................................... 11
     2.     Changes in Rates Subject to Regulatory Approval ................. 11
     3.     Retention of Jurisdiction ....................................... 11
G.    Tax Consequences of Plan .......................................... 11

**IV.    CONFIRMATION REQUIREMENTS AND PROCEDURES** ............... 12
    A.     Who May Vote or Object .......................................... 12
       1.     Who May Object to Confirmation of the Plan ..................... 12
       2.     Who May Vote to Accept/Reject the Plan ........................ 12
          a.     What is an Allowed Claim/Interest ....................... 13
          b.     What Is an Impaired Claim/Interest ...................... 13
       3.     Who is <u>Not</u> Entitled to Vote .................................. 14
       4.     Who Can Vote in More Than One Class ......................... 14
       5.     Votes Necessary to Confirm the Plan ........................... 14
       6.     Votes Necessary for a Class to Accept the Plan ................... 14
       7.     Treatment of Nonaccepting Classes ............................. 15
       8.     Request for Confirmation Despite Nonacceptance by Impaired
          Class(es). ................................................... 15
    B.     Liquidation Analysis ............................................. 15
    C.     Feasibility ..................................................... 18
    D.     Non-Compliance of the Absolute Priority Rule ......................... 18

**V.    EFFECTS OF CONFIRMATION OF PLAN** ........................... 19
    A.     Discharge ..................................................... 19
    B.     Revesting of Property in the Debtor ............................... 20
    C.     Modification of Plan ............................................ 20
    D.     Post-Confirmation Status Report ................................... 20
    E.     Quarterly Fees ................................................. 21
    F.     Post-Confirmation Conversion/Dismissal ............................. 21
    G.    Final Decree ................................................... 21

**VI.   SUPPORTING DECLARATIONS** ..................................... 22
    EXHIBIT A - LIST OF ALL ASSETS ....................................... 22
    EXHIBIT B – DEBTOR'S MONTHLY INCOME AND EXPENSES DURING THE
        PENDANCY OF THE BANKRUPTCY CASE ......................... 23
    EXHIBIT C – LIST OF GENERAL UNSECURED CLAIMS ................... 24

# I.

## INTRODUCTION

Robert Gordon Roy and Louise Marie-Therese Vande Wiele are the Debtors in a Chapter 11 bankruptcy case. On September 2, 2015, Debtors commenced a voluntary bankruptcy case by filing a Chapter 13 petition under the United States Bankruptcy Code ("Code"), 11 U.S.C. § 101 et seq. Debtors converted their Chapter 13 case to a Chapter 11 case on December 3, 2015. Chapter 11 allows the Debtors, and under some circumstances, creditors and others parties in interest, to propose a plan of reorganization ("Plan"). The Plan may provide for the Debtors to reorganize by continuing to operate, to liquidate by selling assets of the estate, or a combination of both. Debtors are the party proposing the Plan. THE DOCUMENT YOU ARE READING IS THE DISCLOSURE STATEMENT FOR THE PROPOSED PLAN.

This is a reorganization plan. In other words, the Proponent seeks to accomplish payments under the Plan by using Debtors' income. The Effective Date of the proposed Plan is 45 days after confirmation.

### A.    Purpose of This Document

This Disclosure Statement summarizes what is in the Plan, and tells you certain information relating to the Plan and the process the Court follows in determining whether or not to confirm the Plan.

**READ THIS DISCLOSURE STATEMENT CAREFULLY IF YOU WANT TO KNOW ABOUT:**

(1)    **WHO CAN VOTE OR OBJECT,**

(2)    **WHAT THE TREATMENT OF YOUR CLAIM IS (i.e., what your claim will receive if the Plan is confirmed), AND HOW THIS TREATMENT COMPARES TO WHAT YOUR CLAIM WOULD RECEIVE IN LIQUIDATION,**

(3)    **THE HISTORY OF THE DEBTOR AND SIGNIFICANT EVENTS DURING THE BANKRUPTCY,**

3

(4) **WHAT THINGS THE COURT WILL LOOK AT TO DECIDE WHETHER OR NOT TO CONFIRM THE PLAN,**

(5) **WHAT IS THE EFFECT OF CONFIRMATION, AND**

(6) **WHETHER THIS PLAN IS FEASIBLE.**

This Disclosure Statement cannot tell you everything about your rights. You should consider consulting your own lawyer to obtain more specific advice on how this Plan will affect you and what is the best course of action for you.

Be sure to read the Plan as well as the Disclosure Statement. If there are any inconsistencies between the Plan and the Disclosure Statement, the Plan provisions will govern.

The Code requires a Disclosure Statement to contain "adequate information" concerning the Plan. The Bankruptcy Court ("Court") has approved this document as an adequate Disclosure Statement, containing enough information to enable parties affected by the Plan to make an informed judgment about the Plan. Any party can now solicit votes for or against the Plan.

**B.     Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing**

THE COURT HAS NOT YET CONFIRMED THE PLAN DESCRIBED IN THIS DISCLOSURE STATEMENT. IN OTHER WORDS, THE TERMS OF THE PLAN ARE NOT YET BINDING ON ANYONE. HOWEVER, IF THE COURT LATER CONFIRMS THE PLAN, THEN THE PLAN WILL BE BINDING ON THE DEBTOR AND ON ALL CREDITORS AND INTEREST HOLDERS IN THIS CASE.

**1.     Time and Place of the Confirmation Hearing**

The hearing where the Court will determine whether or not to confirm the Plan will take place at a yet to be determined date at the L. Clure Morton Post Office and Courthouse, 9 East Broad Street, Cookeville, Tennessee. Notice will be given regarding the date and time of this hearing.

4

**2. Deadline For Voting For or Against the Plan**

If you are entitled to vote, it is in your best interest to timely vote on the enclosed ballot and return the ballot in the enclosed envelope to:

Steven L. Lefkovitz

618 Church St., Ste. 410

Nashville, TN 37219.

Your ballot must be timely received or it will not be counted.

**3. Deadline For Objecting to the Confirmation of the Plan**

Objections to the confirmation of the Plan must be filed with the Court and served upon Steven L. Lefkovitz, counsel for Debtor, by the date and time set by the Clerk's office.

**4. Identity of Person to Contact for More Information Regarding the Plan**

Any interested party desiring further information about the Plan should contact Steven L. Lefkovitz, (615) 256-8300, 618 Church St., Ste. 410, Nashville, TN 37219.

**C. Disclaimer**

The Debtors have made no separate appraisal of the Debtors' real and personal property assets but the Debtors believe that values contained herein are accurate. The Debtors believe this to be a fair and equitable estimate of the value of their assets as of May 1, 2016. The information contained in this Disclosure Statement is provided by the Debtors. The Plan Proponents represents that everything stated in the Disclosure Statement is true to the Proponents' best knowledge. The Court has not yet determined whether or not the Plan is confirmable and makes no recommendation as to whether or not you should support or oppose the Plan.

**A.     Description and History of the Debtors' Business**

The Debtors are individuals.

The Debtors receive income from husband's employment as a 1099 contract employee. Husband is a physician and is employed by Riverview Regional Medical Center in Carthage, Tennessee.

**B.     Management of the Debtor Before and After the Bankruptcy**

The Debtors managed their own affairs prior to the bankruptcy and will continue to manage their affairs after the bankruptcy.

**C.     Events Leading to Chapter 11 Filing**

Here is a brief summary of the circumstances that <u>led to the filing</u> of this Chapter 11 case: Debtors were the 100% owners in Tanglewood Medical Center, Inc., which was a family practice medical clinic located in Carthage, Tennessee. A fire destroyed the building housing the medical clinic and due to an insurance dispute, the proceeds did not cover the full cost of the damages to the property. Due to the fire damage and loss of income, the corporation was unable to service its debts and the Debtors, who made personal guarantees on the debts of the business, were saddled with the business debt. Debtors have no ability to satisfy the debts and have filed this case to propose a plan of reorganization that is fair and equitable to all creditors while also feasible based on Debtors' income and expenses.

**E.     Significant Events During the Bankruptcy**

**1.     Bankruptcy Proceedings**

The following is a chronological list of significant events which have occurred <u>during</u> this case:

An Order converting the Debtors' case from Chapter 13 to Chapter 11 was entered on December 3, 2015.

An Agreed Adequate Protection Order was entered between Debtors and VW Credit, Inc. on April 1, 2016.

An order was entered on 7-1-2016 approving compromise and settlement on insurance proceeds paid to RREF.

The Court has approved the employment of the following professionals: Steven L. Lefkovitz, counsel for Debtor.

Currently, there are no adversary proceedings pending.

**2.      Other Legal Proceedings**

The Debtor is not involved in any non-bankruptcy legal proceedings.

**3.      Actual and Projected Recovery of Preferential or Fraudulent Transfers**

There are no preferential or fraudulent transfers in this case.

**4.      Procedures Implemented to Resolve Financial Problems**

Debtor's financial problems stem from the business debt of a dissolved corporation due to property loss from a fire. The problems cannot and will not be repeated as Debtors iare relying only on his employment income to provide income.

**5.      Current and Historical Financial Conditions**

The identity and fair market value of the estate's assets are listed in Exhibit A.  See also the Debtors' financial history set forth in the monthly operating reports which are summarized in Exhibit B.

**III.**

**SUMMARY OF THE PLAN OF REORGANIZATION**

**A.      What Creditors and Interest Holders Will Receive Under The Proposed Plan**

As required by the Bankruptcy Code, the Plan classifies claims and interests in various classes according to their right to priority. The Plan states whether each class of claims or interests is impaired or unimpaired.  The Plan provides the treatment each class will receive.

**B.      Unclassified Claims**

Certain types of claims are not placed into voting classes; instead they are unclassified. They are not considered impaired and they do not vote on the Plan because they are automatically entitled to specific treatment provided for them in the Bankruptcy Code. As such, the Proponent has not placed the following claims in a class.

1.     **Administrative Expenses**

Administrative expenses are claims for costs or expenses of administering the Debtors' Chapter 11 case which are allowed under Code section 507(a)(1). The Code requires that all administrative claims be paid on the Effective Date of the Plan, unless a particular claimant agrees to a different treatment.

There are no administrative claims under the plan except for any quarterly fees owed by the Debtors that may become due between now and the confirmation of the case and the unpaid attorney's fees for Steven L. Lefkovitz, Counsel for the Debtors-In-Possession, which are subject to the approval of the Court.

2.     **Priority Tax Claims**

Priority tax claims are certain unsecured income, employment and other taxes described by Code Section 507(a)(8). The Code requires that each holder of such a 507(a)(8) priority tax claim receive the present value of such claim in deferred cash payments, over a period not exceeding five years from the date of filing for relief in this case.

The following chart lists all of the Debtors' Section 507(a)(8) priority tax claims and their treatment under this Plan:

8

| Description | Amount Owed | Treatment | |
|---|---|---|---|
| ● Name = Internal revenue Service<br>● Type of tax = Civil Penalty, Income<br>● Tax years = 2009, 2012 - 2014 | $121,824.94 | ● Pymt interval<br>● Pymt amt/interval<br>● Begin date<br>● End date<br>● Interest Rate %<br>● Total Payout Amount | = Monthly<br>= $2,919.84<br>= November 1, 2016<br>= August 1, 2020<br>= 4.00%<br>= $132,033.12 |

If the reorganized Debtor substantially defaults on the payments of a tax due to the IRS under the plan, the entire tax debt still owed to the IRS shall become due and payable immediately, and the IRS may collect these unpaid tax liabilities through the administrative collection provisions of the Internal Revenue Code.

**C.    Classified Claims and Interests**

**1.    Classes of Secured Claims**

Secured claims are claims secured by liens on property of the estate. The following chart lists all classes containing Debtor's secured pre-petition claims and their treatment under this Plan:

| CLASS # | DESCRIPTION | INSIDERS (Y/N) | IMPAIRED (Y/N) | TREATMENT | |
|---|---|---|---|---|---|
| 3-A | Secured claim of: <br>• Name = Roundpoint Mortgage Servicing <br>• Collateral description = 3075 Falcon Tr., Cookeville, TN 38506 and adjoining lot <br>• Collateral value = $205,700.00 <br>• Priority of security int. = First <br>• Principal owed = $177,488.18 <br>• Total claim amount = $177,488.18 <br>• Total arrearage = $19,583.62 as of October 1, 2016 <br>• Ongoing payment of $1,313.26 includes $935.74 P&I and $377.52 escrow, which may fluctuate | N | Y | • Pymt interval <br><br>• Pymt amt/interval <br><br><br><br><br><br><br><br>• Begin date <br><br>• End date <br>• Interest rate <br>• Total payout <br>• Treatment of Lien | = Monthly <br><br>= $1,313.26 + Arrearage cure payment of $326.40 for 60 months at 0.0% interest <br><br>= November 1, 2016 <br>= Contract <br>= Contract <br>= Contract <br>= Retained until completion of payments |

| 3-B | Secured claim of:<br>• Name = Rondpoint Mortgage Servicing<br>• Collateral description = 205 N. Riverside Dr., Carthage, TN 37030<br>• Collateral value = $121,200.00<br>• Priority of security int. = First<br>• Principal owed = $63,272.26<br>• Total claim amount = $63,272.26 | N | Y | • Pymt interval<br><br>• Pymt amt/interval<br><br>• Begin date<br><br><br><br><br>• End date<br>• Interest rate<br>• Total payout<br>• Treatment of Lien | = Monthly<br><br>= $1,179.59<br><br>= 15th day of the month following the Effective Date<br><br>= 60 months<br>= 4.5%<br>= $70,775.40<br>= Retained until completion of payments |
| 3-B | Secured claim of:<br>• Name = Wells Fargo<br>• Collateral description = HVAC Unit<br>• Collateral value = $8,933.12<br>• Priority of security int. = First<br>• Principal owed = $8,933.12<br>• Total claim amount = $8,933.12<br>• Total unsecured balance = $27.00 | N | Y | • Pymt interval<br><br>• Pymt amt/interval<br><br>• Begin date<br><br><br><br><br>• End date<br>• Interest rate<br>• Total payout<br>• Treatment of Lien | = Monthly<br><br>= $166.54<br><br>= 15th day of the month following the Effective Date<br><br>= 60 months<br>= 4.5%<br>= $9,992.40<br>= Retained until completion of payments |

| 3-B | Secured claim of:<br>• Name = Capital One Auto Finance<br>• Collateral description = 2014 Dodge Grand Caravan<br>• Collateral value = $18,000.00<br>• Priority of security int. = First<br>• Principal owed = $18,000.00<br>• Total claim amount = $20,768.20<br>• Total unsecured balance = $2,768.20 | N | Y | • Pymt interval<br><br>• Pymt amt/interval<br><br>• Begin date<br><br><br><br><br>• End date<br>• Interest rate<br>• Total payout<br>• Treatment of Lien | = Monthly<br><br>= $335.57<br><br><br>= 15th day of the month following the Effective Date<br><br>= 60 months<br>= 4.5%<br>= $20,134.20<br>= Retained until completion of payments |
| 3-C | Secured claim of:<br>• Name = VW Credit, Inc.<br>• Collateral description = 2014 VW Passat<br>• Collateral value = $23,984.00<br>• Priority of security int. = First<br>• Principal owed = $20,427.58 less adequate protection payments<br>• Total claim amount = $20,427.58 | N | Y | • Pymt interval<br><br>• Pymt amt/interval<br><br>• Begin date<br>• End date<br><br><br>• Interest rate<br>• Total payout<br>• Treatment of Lien | = Monthly<br><br>= $385.50<br><br><br>= April 28, 2016<br>= March 28, 2016<br><br>= 5.0%<br>= $22,710.60<br>= Retained until completion of payments |

| 3-D | Secured claim of:<br>• Name = RREF II PEBP Acquisitions, LLC<br>• Collateral description = 259 Dixon Springs Hwy., Carthage, TN 37030<br>• Collateral value = $68,000.00<br>• Priority of security int. = First<br>• Principal owed = $68,000.00<br>• Total claim amount = $204,043.81<br>• Total unsecured balance = $136,043.81 | N | Y | • Secured creditor shall be entitled to the insurance proceeds from the fire destroying the real property pursuant to the Compromise and Settlement filed in this case entered on 7-1-2016. The automatic stay shall be terminated and Debtor shall surrender the property to the secured creditor upon confirmation. Creditor shall have 30 days to file an amended deficiency claim, if different that the estimate provided, and said claim shall be treated with the general unsecured creditors |
|---|---|---|---|---|
| 3-E | Secured claim of:<br>• Name = First Freedom Bank<br>• Collateral description = Office Furniture & Equipment<br>• Collateral value = $10,000.00<br>• Priority of security int. = First<br>• Principal owed = $0.00<br>• Total claim amount = $12,307.20<br>• Total unsecured balance = $2,307.20 | N | Y | • The automatic stay shall be terminated and Debtor shall surrender the property to the secured creditor upon confirmation. Creditor shall have 30 days to file an amended deficiency claim, if different that the estimate provided, and said claim shall be treated with the general unsecured creditors |

13

2.     **Classes of Priority Unsecured Claims**

Certain priority claims that are referred to in Code Sections 507(a)(3), (4), (5), (6), and (7) are required to be placed in classes. These types of claims are entitled to priority treatment as follows: the Code requires that each holder of such a claim receive cash on the Effective Date equal to the allowed amount of such claim.  However, a class of unsecured priority claim holders may vote to accept deferred cash payments of a value, as of the Effective Date, equal to the allowed amount of such claims.

There are no priority unsecured claims under the Plan.

3.     **Class of General Unsecured Claims**

General unsecured claims are unsecured claims not entitled to priority under Code Section 507(a).  The following chart identifies this Plan's treatment of the class containing <u>all</u> of Debtors' general unsecured claims (see Exhibit D for detailed information about each general unsecured claim):

| CLASS# | DESCRIPTION | IMPAIRED (Y/N) | TREATMENT | |
|--------|-------------|----------------|-----------|--|
| 4 | General unsecured claims <br><br> • Total amount of claims = $275,307.39 | Y, Claims in this class are entitled to vote on the plan. | • Pymt interval <br> • Pymt amt/interval <br> • Begin date <br><br> • End date <br><br> • Interest rate <br> • Total payout | = Monthly <br> = $100.00 <br> = September 1, 2016 <br> = August 1, 2020 <br> = 0.00% <br> = $6,000.00 |

Monthly payments shall be made on a pro rata basis based on the value of each unsecured claim. Any plan payments returned to the Debtors by unsecured creditors shall become property of the reorganized Debtors.

14

Debtor is aware that unsecured student loan debts are non-dischargeable. Debtor will make arrangements with Navient Solutions, Inc. and AES Loan Servicing at the conclusion of the Chapter 11 plan in order to arrange payments of the balance of the debts.

### 4. Class(es) of Interest Holders

Interest holders are the parties who hold ownership interest (i.e., equity interest) in the Debtor. If the Debtor is a corporation, entities holding preferred or common stock in the Debtor are interest holders. If the Debtor is a partnership, the interest holders include both general and limited partners. If the Debtor is an individual, the Debtor is the interest holder.

The Debtors are individuals in this case.

## D. Means of Effectuating the Plan

### 1. Funding for the Plan

The Plan will be funded by the following: Income from husband's employment as a 1099 contract employee by Riverview Regional Medical Center in Carthage, Tennessee.

### 2. Post-confirmation Management

The Debtors shall be responsible for post-confirmation management.

### 3. Disbursing Agent

Debtors shall act as the disbursing agent for the purpose of making all distributions provided for under the Plan. The Disbursing Agents shall serve without bond and shall receive no compensation for distribution services rendered and expenses incurred pursuant to the Plan.

## E. Risk Factors

The proposed Plan has the following risks: The Plan, due to its nature of being funded over time, maintains a possibility of default if Debtors are unable to realize their current financial projections or somehow finds themselves unable to maintain the same level of monthly income.

## F. Other Provisions of the Plan

### 1. Executory Contracts and Unexpired Leases

### a. Assumptions

There are no unexpired leases or executory contracts to be assumed under this Plan.

**b.      Rejections**

On the Effective Date, the following executory contracts and unexpired leases will be rejected:

All executory contracts and leases not explicitly assumed above.

The order confirming the Plan shall constitute an Order approving the rejection of the lease or contract.  If you are a party to a contract or lease to be rejected and you object to the rejection of your contract or lease, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan.

THE BAR DATE FOR FILING A PROOF OF CLAIM BASED ON A CLAIM ARISING FROM THE REJECTION OF A LEASE OR CONTRACT WAS APRIL 25, 2016. Any claim based on the rejection of a contract or lease will be barred if the proof of claim is not timely filed, unless the Court later orders otherwise.

**2.      Changes in Rates Subject to Regulatory Commission Approval**

This Debtors are not subject to governmental regulatory commission approval of their rates.


**3.      Retention of Jurisdiction.**

The Court shall retain jurisdiction for purposes of granting a discharge to Debtors, determining any and all objections to the amounts of claims, applications for compensation and expenses, to enforce the provisions of the Plan, to correct any defect, cure any omissions or reconcile any inconsistency in the Plan, and to determine such other matters as may be provided for in the Order of the Court confirming the Plan.

**G.      Tax Consequences of Plan**

CREDITORS AND INTEREST HOLDERS CONCERNED WITH HOW THE PLAN MAY AFFECT THEIR TAX LIABILITY SHOULD CONSULT WITH THEIR OWN ACCOUNTANTS, ATTORNEYS, AND/OR ADVISORS. The following disclosure of possible

16

tax consequences is intended solely for the purpose of alerting readers about possible tax issues this Plan may present to the Debtors. The Proponent CANNOT and DOES NOT represent that the tax consequences contained below are the only tax consequences of the Plan because the Tax Code embodies many complicated rules which make it difficult to state completely and accurately all the tax implications of any action.

The Debtors are unaware of any tax consequences which the Plan will have on the Debtors' tax liability.

**IV.**

**CONFIRMATION REQUIREMENTS AND PROCEDURES**

PERSONS OR ENTITIES CONCERNED WITH CONFIRMATION OR THIS PLAN SHOULD CONSULT WITH THEIR OWN ATTORNEYS BECAUSE THE LAW ON CONFIRMING A PLAN OF REORGANIZATION IS VERY COMPLEX. The following discussion is intended solely for the purpose of alerting readers about basic confirmation issues, which they may wish to consider, as well as certain deadlines for filing claims. The proponent CANNOT and DOES NOT represent that the discussion contained below is a complete summary of the law on this topic.

Many requirements must be met before the Court can confirm a Plan. Some of the requirements include that the Plan must be proposed in good faith, acceptance of the Plan, whether the Plan pays creditors at least as much as creditors would receive in a Chapter 7 liquidation, and whether the Plan is feasible. These requirements are <u>not</u> the only requirements for confirmation.

**A.**     **Who May Vote or Object**

**1.**     **Who May Object to Confirmation of the Plan**

Any party in interest may object to the confirmation of the Plan, but as explained below not everyone is entitled to vote to accept or reject the Plan.

**2.**     **Who May Vote to Accept/Reject the Plan**

17

A creditor or interest holder has a right to vote for or against the Plan if that creditor or interest holder has a claim which is both (1) allowed or allowed for voting purposes and (2) classified in an impaired class.

### a.  What Is an Allowed Claim/Interest

As noted above, a creditor or interest holder must first have an <u>allowed claim or interest</u> to have the right to vote. Generally, any proof of claim or interest will be allowed, unless a party in interest brings a motion objecting to the claim.  When an objection to a claim or interest is filed, the creditor or interest holder holding the claim or interest cannot vote unless the Court, after notice and hearing, either overrules the objection or allows the claim or interest for voting purposes.

THE BAR DATE FOR FILING A PROOF OF CLAIM IN THIS CASE WAS APRIL 25, 2016. A creditor or interest holder may have an allowed claim or interest even if a proof of claim or interest was not timely filed.  A claim is deemed allowed if (1) it is scheduled on the Debtors' schedules and such claim is not scheduled as disputed, contingent, or unliquidated, and (2) no party in interest has objected to the claim. An interest is deemed allowed if it is scheduled and no party in interest has objected to the interest.


### b.  What Is an Impaired Claim/Interest

As noted above, an allowed claim or interest only has the right to vote if it is in a class that is <u>impaired</u> under the Plan. A class is impaired if the Plan alters the legal, equitable, or contractual rights of the members of that class. For example, a class comprised of general unsecured claims is impaired if the Plan fails to pay the members of that class 100% of what they are owed.

In this case, the Proponent believes that classes 3 and 4 are impaired and that holders of claims in each of these classes are therefore entitled to vote to accept or reject the Plan. The Proponent believes that all other classes are unimpaired and that holders of claims in each of these classes therefore do not have the right to vote to accept or reject the Plan. Parties who

18

dispute the Proponent's characterization of their claim or interest as being impaired or unimpaired may file an objection to the Plan contending that the Proponent has incorrectly characterized the class.

### 3. Who is <u>Not</u> Entitled to Vote

The following four types of claims are <u>not</u> entitled to vote: (1) claims that have been disallowed; (2) claims in unimpaired classes; (3) claims entitled to priority pursuant to Code sections 507(a)(1), (a)(2), and (a)(8); and (4) claims in classes that do not receive or retain any value under the Plan. Claims in unimpaired classes are not entitled to vote because such classes are deemed to have accepted the Plan. Claims entitled to priority pursuant to Code sections 507(a)(1), (a)(2), and (a)(7) are not entitled to vote because such claims are not placed in classes and they are required to receive certain treatment specified by the Code. Claims in classes that do not receive or retain any value under the Plan do not vote because such classes are deemed to have rejected the Plan. EVEN IF YOUR CLAIM IS OF THE TYPE DESCRIBED ABOVE, YOU MAY STILL HAVE A RIGHT TO OBJECT TO THE CONFIRMATION OF THE PLAN.

### 4. Who Can Vote in More Than One Class

A creditor whose claim has been allowed in part as a secured claim and in part as an unsecured claim is entitled to accept or reject a Plan in both capacities by casting one ballot for the secured part of the claim and another ballot for the unsecured claim.

### 5. Votes Necessary to Confirm the Plan

If impaired classes exist, the Court cannot confirm the Plan unless (1) at least one impaired class has accepted the Plan without counting the votes of any insiders within that class, and (2) all impaired classes have voted to accept the Plan, unless the Plan is eligible to be confirmed by "cramdown" on non-accepting classes, as discussed later in Section {IV.A.8.}.

### 6. Votes Necessary for a Class to Accept the Plan

A class of claims is considered to have accepted the Plan when more than one-half (1/2) in number and at least two-thirds (2/3) in dollar amount of the claims which actually voted, voted

19

in favor of the Plan. A class of interests is considered to have accepted the Plan when at least two-thirds (2/3) in amount of the interest-holders of such class which actually voted, voted to accept the Plan.

### 7. Treatment of Nonaccepting Classes

As noted above, even if all impaired classes do not accept the proposed Plan, the Court may nonetheless confirm the Plan if the nonaccepting classes are treated in the manner required by the Code. The process by which nonaccepting classes are forced to be bound by the terms of the Plan is commonly referred to as "cramdown." The Code allows the Plan to be "crammed down" on nonaccepting classes of claims or interests if it meets all consensual requirements except the voting requirements of 1129(a)(8) and if the Plan does not "discriminate unfairly" and is "fair and equitable" toward each impaired class that has not voted to accept the Plan as referred to in 11 U.S.C. § 1129(b) and applicable case law.

### 8. Request for Confirmation Despite Nonacceptance by Impaired Class(es)

The party proposing this Plan will ask the Court to confirm this Plan by cramdown on impaired classes 3 and 4 if any of these classes do not vote to accept the Plan.

## B. Liquidation Analysis

Another confirmation requirement is the "Best Interest Test", which requires a liquidation analysis. Under the Best Interest Test, if a claimant or interest holder is in an impaired class and that claimant or interest holder does not vote to accept the Plan, then that claimant or interest holder must receive or retain under the Plan property of a value not less than the amount that such holder would receive or retain if the Debtor were liquidated under Chapter 7 of the Bankruptcy Code.

In a Chapter 7 case, the Debtor's assets are usually sold by a Chapter 7 trustee. Secured creditors are paid first from the sales proceeds of properties on which the secured creditor has a lien. Administrative claims are paid next. Next, unsecured creditors are paid from any remaining sales proceeds, according to their rights to priority. Unsecured creditors with the same priority share in proportion to the amount of their allowed claim in relationship to the amount of total

20

allowed unsecured claims. Finally, interest holders receive the balance that remains after all creditors are paid, if any.

For the Court to be able to confirm this Plan, the Court must find that all creditors and interest holders who do not accept the Plan will receive at least as much under the Plan as such holders would receive under a Chapter 7 liquidation. The Plan Proponent maintains that this requirement is met here for the following reasons: Creditors will receive at least as much as they would in a Chapter 7 liquidation case.

Below is a demonstration, in balance sheet format, that all creditors and interest holders will receive at least as much under the Plan as such creditor or interest holder would receive under a Chapter 7 liquidation. (See Exhibit A for a detailed explanation of how the following assets are valued. This information is provided by the Debtors.) **:**

| ASSETS VALUE AT LIQUIDATION VALUES: | |
|---|---|
| **CURRENT ASSETS** | |
| a.  Cash on hand | $ 4,500.00 |
| b.  Accounts receivable | $ 0.00 |
|     TOTAL CURRENT ASSETS | $ 4,500.00 |
| **FIXED ASSETS** | |
| a.  Household goods, furnishings, books, art, jewelry & miscellany | $ 15,490.00 |
| b.  Office furniture & Equipment | $ 10,000.00 |
| c.  Automobiles & trailers | $ 41,984.00 |
| d.  Buildings & land | $ 394,900.00 |
|     TOTAL FIXED ASSETS | $462,374.00 |
| **OTHER ASSETS** | |
| a.  IRA | $ 2,164.86 |
| b.  Stocks and bonds | $ 177.14 |
|     TOTAL OTHER ASSETS | $ 2,342.00 |
| **TOTAL ASSETS AT LIQUIDATION VALUE** | **$ 469,216.00** |
| | ========= |
| **Less:** | |
| Secured creditor's recovery | $ 349,563.60 |
| **Less:** | |
| Chapter 7 trustee fees and expenses | $ 11,700.00 |
| **Less:** | |
| Chapter 11 administrative expenses | $ 0.00 |
| **Less:** | |
| Priority claims, | $ 121,824.94 |
| excluding administrative expense claims | |
| **Less:** | |
| Debtor's claimed exemptions | $ 29,664.86 |
| | ========= |
| (1) Balance for unsecured claims | $ 0.00 |
| (2) Total amt of unsecured claims | $ 275,307.39 |

**ESTIMATED % OF THEIR CLAIMS WHICH UNSECURED CREDITORS WOULD RECEIVE OR RETAIN IN A CH. 7 LIQUIDATION:  =  0%**
**ESTIMATED % OF THEIR CLAIMS WHICH UNSECURED CREDITORS WILL RECEIVE OR RETAIN UNDER THIS PLAN:  =  2.2%**

[1/]    Note:  The deficiency portion of a secured recourse claim must be added to the total amount of unsecured claims.

[2/]    Note:  If this percentage is greater than the amount to be paid to the unsecured creditors on a "present value basis" under the Plan, the Plan is not confirmable unless Proponent obtains acceptance by every creditor in the general unsecured class.

Below is a demonstration, in tabular format, which shows that all creditors and interest holders will receive at least as much under the Plan as such creditor or holder would receive under a Chapter 7 liquidation.

| CLAIMS & CLASSES | PAYOUT PERCENTAGE UNDER THE PLAN | PAYOUT PERCENTAGE IN CHAPTER 7 LIQUIDATION |
| --- | --- | --- |
| Class 2 – Priority Claims | 100% | 64.1% |
| Class 3 – Secured Claims | 72.6% | 72.2% |
| Class 4 – Unsecured Claims | 2.2% | 0% |

## C.     Feasibility

Another requirement for confirmation involves the feasibility of the Plan, which means that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor under the Plan, unless such liquidation or reorganization is proposed in the Plan.

There are at least two important aspects of a feasibility analysis. The first aspect considers whether the Debtor will have enough cash on hand on the Effective Date of the Plan to pay all the claims and expenses which are entitled to be paid on such date.  The Plan Proponent maintains that this aspect of feasibility is satisfied as illustrated here:

| | |
| --- | --- |
| Cash Debtor will have on hand by Effective Date | $ 10,186.33 |
| **To Pay:** Administrative claims | - 0.00 |
| **To Pay:** Statutory costs & charges | - 0.00 |
| **To Pay:** Other Plan Payments due on Effective Date | - 0.00 |
| Balance after paying these amounts............... | $ 10,186.33 |

The sources of the cash Debtor will have on hand by the Effective Date, as shown above are:

| $ 4,186.33 | Cash in DIP Account now |
|---|---|
| + 6,000.00 | Additional cash DIP will accumulate from net earnings between now and Effective Date |
| + 0.00 | Borrowing |
| + 0.00 | Capital Contributions |
| + 0.00 | Other |
| $ 10,186.33 | **Total** |

The second aspect considers whether the Proponent will have enough cash over the life of the Plan to make the required Plan payments.

The Proponent has provided financial statements which include both historical and projected financial information. Please refer to the monthly operating reports for the relevant financial statements. YOU ARE ADVISED TO CONSULT WITH YOUR ACCOUNTANT OR FINANCIAL ADVISOR IF YOU HAVE ANY QUESTIONS PERTAINING TO THESE FINANCIAL STATEMENTS.

In summary, the Plan proposes to pay $6,726.70 each month. Debtors project that they will have an average cash flow, after paying operating expenses and post-confirmation taxes, of $6,800.00 each month for the life of the Plan. The final Plan payment is expected to be paid on August 1, 2020. Debtors' average monthly cash flow, after paying operating expenses and post-confirmation taxes, during the bankruptcy case has been approximately $1,400.00 (See more detailed calculation in Exhibit B). Debtors believe that they can make significant cuts to their monthly expenses and/or work more in order to adequately fund their plan. The Plan Proponents contend that Debtors' financial projections are feasible.

### D. NON-COMPLIANCE OF THE ABSOLUTE PRIORITY RULE

**NOTICE is hereby given that the proposed plan does not comply with the absolute priority rule of Section 1129(b) of the Bankruptcy Code, and absent consent of creditors, the plan may be non-confirmable. Creditors and parties in interest should consider that fact before voting for or against the plan of reorganization.**

### V.

### EFFECT OF CONFIRMATION OF PLAN

**A. Discharge**

Pursuant to 11 U.S.C. §1141(d)(5), in a case in which the Debtors are individuals, Confirmation of the Plan does not discharge any debt provided for in the Plan until the Court grants a discharge on completion of all payments under the Plan. However, §1141(d)(5)(B) provides that at any time after the Confirmation of the Plan, and after notice and a hearing, the Court may grant a discharge to the Debtors before completing all payments under the Plan if (1) the value, as of the Effective Date of the Plan, of property actually distributed under the Plan on account of each Allowed Unsecured Claim is not less than the amount that would have been paid on such Claim if the estate of the Debtors had been liquidated under Chapter 7 on such date, and (2) modification of the Plan under Section 1127 is not practicable. To determine the amount that would have been paid if the estate of the Debtors had been liquidated under Chapter 7 on the Effective Date of the Plan, please refer to the liquidation analysis contained in the Disclosure Statement.

**B. Revesting of Property in the Debtor**

Except as provided elsewhere in the Plan, the confirmation of the Plan revests all of the property of the estate in the Debtors.

**C.     Modification of Plan**

The Proponent of the Plan may modify the Plan at any time before confirmation.

However, the Court may require a new disclosure statement and/or revoting on the Plan.

The Proponent of the Plan may also seek to modify the Plan at any time after confirmation

only if (1) the Plan has not been substantially consummated <u>and</u> (2) the Court authorizes the

proposed modifications after notice and a hearing.

**D.     Post-Confirmation Status Report**

The Debtors shall furnish post-confirmation quarterly reports by the 15th of the month

following the end of the quarter to the United States Trustee's office and to any creditors

requesting same in writing from the Debtor's counsel. This obligation of the Debtors shall

continue after the Final Decree is entered in this matter until all Plan payments have been

completed.

**E.     Quarterly Fees**

Quarterly fees accruing under 28 U.S.C. § 1930(a)(6) to date of confirmation shall be paid

to the United States Trustee on or before the effective date of the plan.  Quarterly fees accruing

under 28 U.S.C. § 1930(a)(6) after confirmation shall be paid to the United States Trustee in

accordance with 28 U.S.C. § 1930(a)(6) until entry of a final decree, or entry of an order of

dismissal or conversion to chapter 7.

**F.     Post-Confirmation Conversion/Dismissal**

A creditor or party in interest may bring a motion to convert or dismiss the case under §

1112(b), after the Plan is confirmed, if there is a default in performing the Plan.  If the Court

orders, the case converted to Chapter 7 after the Plan is confirmed, then all property that had been

property of the Chapter 11 estate, and that has not been disbursed pursuant to the Plan, will revest

in the Chapter 7, estate. The automatic stay will be reimposed upon the revested property, but

only to the extent that relief from stay was not previously authorized by the Court during this

case.

26

The order confirming the Plan may also be revoked under very limited circumstances. The Court may revoke the order if the order of confirmation was procured by fraud and if the party in interest brings an adversary proceeding to revoke confirmation within 180 days after the entry of the order of confirmation.

## G.    Final Decree

Once the estate has been fully administered as referred to in Bankruptcy Rule 3022, the Plan Proponent, or other party as the Court shall designate in the Plan Confirmation Order, shall file a motion with the Court to obtain a final decree to close the case.

Date: July 13, 2016

Respectfully submitted,

/s/ Steven L. Lefkovitz, No. 5953
STEVEN L. LEFKOVITZ
Counsel to the Debtor
618 Church Street, Suite 410
Nashville, TN  37219
Phone: (615) 256-8300
Fax:     (615) 255-4516
Email:  slefkovitz@lefkovitz.com

# VI.

## SUPPORTING DECLARATIONS

## EXHIBIT A - LIST OF ALL ASSETS

| Market Value | Secured Value | Equity | Description |
|---|---|---|---|
| $205,700.00 | $177,488.18 | $28,211.82 | 3075 Falcon Trace, Cookeville, TN 38506 and adjoining lot |
| $121,200.00 | $63,272.26 | $57,927.74 | 205 N. Riverside Dr., Carthage, TN 37030 |
| $68,000.00 | $60,500.00 | $7,500.00 | 259 Dixon Springs Hwy., Carthage, TN 37030 |
| $4,500.00 | $0.00 | $4,500.00 | Cash on Hand in D.I.P Account |
| $4,690.00 | $0.00 | $4,690.00 | Household Goods and Furnishings |
| $10,800.00 | $0.00 | $10,800.00 | Books, Art & Jewelry |
| $10,000.00 | $10,000.00 | $0.00 | Office Furniture & Equipment |
| $2,164.86 | $0.00 | $2,164.86 | IRA |
| $177.14 | $0.00 | $177.14 | TD Ameritrade account |
| $0.00 | $0.00 | $0.00 | 100% interest in dissolved corporation Tanglewood Medical Center, Inc. |
| $0.00 | $0.00 | $0.00 | Potential legal malpractice claim against Voss Law Firm |
| $18,000.00 | $18,000.00 | $0.00 | 2014 Dodge Grand Caravan |
| $23,984.00 | $20,303.16 | $3,680.84 | 2014 VW Passat |
| | | | |
| $469,216.00 | $349,563.60 | $119,652.40 | Totals |

**Liquidation Value of Estate**

| | |
|---|---|
| **Net Value of Estate** | $119,652.40 |
| **Less Homestead Exemption** | $7,500.00 |
| **Less Personal Property Exemption** | $20,000.00 |
| **Less Retirment Account Exemption** | $2,164.86 |
| **Less Trustee Fees & Espenses** | $11,700.00 |
| **Less Priority Claims** | $121,824.94 |
| | |
| **Amount Available for Unsecured Creditors** | ($43,537.40) |

## EXHIBIT B – DEBTOR'S MONTHLY INCOME AND EXPENSES DURING THE PENDANCY OF THE BANKRUPTCY CASE

| | Dec-15 | Jan-16 | Feb-16 | Mar-16 | Apr-16 | May-16 |
|---|---|---|---|---|---|---|
| **Income** | $23,428.27 | $17,580.90 | $26,130.15 | $22,820.00 | $21,959.61 | $20,366.74 |
| **Expenses** | $18,718.08 | $23,256.75 | $22,348.49 | $18,729.48 | $21,732.23 | $19,237.98 |
| **Profit** | $4,710.19 | ($5,675.85) | $3,781.66 | $4,090.52 | $227.38 | $1,128.76 |

|  | **Average** |
|---|---|
| | $22,047.61 |
| | $20,670.50 |
| | $1,377.11 |

## EXHIBIT C - LIST OF GENERAL UNSECURED CLAIMS

| Class | Name | Insider | Impaired | Allowed Claim |
|---|---|---|---|---|
| 4 | AES Loan Servicing | N | Y | $19,767.24 |
| 4 | Amazon | N | Y | $712.24 |
| 4 | Care Credit | N | Y | $11,000.00 |
| 4 | Chase/Southwest | N | Y | $12,413.95 |
| 4 | eCAST Settlement Corporation | N | Y | $3,125.58 |
| 4 | eCAST Settlement Corporation | N | Y | $2,883.37 |
| 4 | First Freedom Bank | N | Y | $12,000.00 |
| 4 | Lassiter Tidwell Davis | N | Y | $15,000.00 |
| 4 | Navient Solutions, Inc. | N | Y | $12,229.41 |
| 4 | Orkin | N | Y | $10,000.00 |
| 4 | Paypal Smart Connect | N | Y | $1,600.00 |
| 4 | Regions Bank | N | Y | $5,500.00 |
| 4 | Tractor Supply | N | Y | $400.00 |
| 4 | Wilson Bank & Trust | N | Y | $9,220.63 |
| 4 | Internal Revenue Service | N | Y | $18,023.97 |
| 4 | Capital One Bank | N | Y | $284.79 |
| 4 | Capital One Auto Finance | N | Y | $2,768.20 |
| 4 | Wells Fargo | N | Y | $27.00 |
| 4 | First Freedom Bank | N | Y | $2,307.20 |
| 4 | RREF II PEBP Acquisitions, Inc. | N | Y | $136,043.81 |
| | **Total Amount for Class** | | | **$275,307.39** |